# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:20-cv-00286-MR

| | |
|---|---|
| JOHN THOMAS JONES, III,  )  <br> ) <br> Plaintiff,  ) <br> ) <br> vs.  ) <br> ) <br> TONI SELLERS HAIRE,  ) <br> ) <br> Defendants.  ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Motion for Summary Judgment filed by Defendants Natalie Snipes Mills, Alvin Burke, and Randy Mullis. [Doc. 68]. Also pending is a "Motion for Rule 56(f) Continuance" filed by the pro se Plaintiff. [Doc. 73].

## I. BACKGROUND

The Plaintiff John Thomas Jones, III, proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred while he was incarcerated at the Lanesboro Correctional Institution.[1] The Plaintiff's verified Complaint passed initial review on claims

---

[1] The Plaintiff was incarcerated at the Maury CI at the time he filed the Complaint; he is presently incarcerated at the Alexander CI.

of deliberate indifference to a serious medical need against the following Lanesboro CI employees: Toni Sellers Haire,[2] the head nurse; Natalie Snipes Mills, a correctional sergeant; Alvin R. Burke, a correctional officer; Randy Mullis,[3] a captain and the officer in charge ("OIC"); and Gregory Haynes, a doctor. [Doc. 1: Complaint; Doc. 11: Order on Initial Review of the Complaint]. The Plaintiff seeks a declaratory judgment, as well as compensatory and punitive damages. [Doc. 1: Complaint at 6]. Defendants Haynes and Haire have been dismissed from this action. [Docs. 39, 43].

Defendants Burke, Mills, and Mullis filed the instant Motion for Summary Judgment arguing that they did not violate the Plaintiff's Eighth Amendment rights; that the Plaintiff is not entitled to compensatory or punitive damages as a matter of law; and that they are entitled to qualified immunity. [Doc. 68: MSJ]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 75: Roseboro Order]. The Plaintiff filed a Response to the

---

[2] "Jane Doe" in the Complaint. [Doc. 1: Complaint at 2].

[3] "John Doe" in the Complaint. [Doc. 1: Complaint at 2].

Motion for Summary Judgment and supporting materials.[4] [Doc. 75: MSJ Response; Doc. 76: Plaintiff's MSJ Response Exhibits]. The Defendants filed a Notice of intent not to reply. [Doc. 77: Notice]. Having been fully briefed, this matter is ripe for disposition.

The Plaintiff has also filed a "Motion for Rule 56(f) Continuance" [Doc. 73], to which the Defendants filed a Response [Doc. 74] in opposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[4] The Plaintiff's arguments and evidence that are directed to individuals who are not defendants, or to Defendants who have been dismissed from the action, will be disregarded insofar as they are not relevant to the Defendants and claims that are presently before the Court.

3

the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be

4

viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The parties' forecasts of evidence show the following, which is undisputed except as otherwise noted.

On September 6, 2017 at around 6:35 p.m., the Plaintiff went to Sergeant Mills' office with an "unbearabl[y]" painful ankle that was black and

blue,[5] and swollen to three times its normal size. [Doc. 1: Verified Complaint at 3; Doc. 68-5: Mills Decl. at ¶ 7]. The Plaintiff told Sergeant Mills that he thought his ankle was broken and declared a medical emergency. [Doc. 1: Verified Complaint at 3; Doc. 68-5: Mills Decl. at ¶¶ 7-8]. Sergeant Mills ordered the Plaintiff to go back to his housing block and said that she would call the nurse to get him help. [Doc. 1: Verified Complaint at 3]. Sergeant Mills called "medical" pursuant to policy and advised Nurse Haire that the Plaintiff was declaring a medical emergency for an ankle that he thought was broken. [Doc. 68-5: Mills Decl. at ¶ 8; Doc. 75: Plaintiff's Decl. at 8].

The NCDPS Health Services Policy & Procedure Manual defines an "emergency" as a "life/limb threatening event" such that "immediate treatment is necessary to prevent death, severe or permanent disability, uncontrolled bleeding or to maintain an airway." [Doc. 68-6: Mullis Decl. Ex at 14]. The Manual further states that, "[w]hen an offender presents a self-declared emergency, the nurse or other provider may instruct the offender to sign up for sick call if the complaint does not have the potential for imminent danger to the offender and would be better resolved through the sick call process." [Id. at 16]. "Custody" may also direct referrals to health care staff

---

[5] According to the Clinical Encounter completed approximately two hours later, the ankle was painful and swollen, but not bruised. [Doc. 76: MSJ Response Ex. at 12].

6

"when the custody officer deems a medical visit is critical and necessary (not in routine cases and not to take the place of the sick call process." [Id. at 17].

Nurse Haire told Sergeant Mills that the Plaintiff needed to put in a regular sick call.[6] [Verified Complaint: Doc. 1 at 3; Doc. 68-5: Mills Decl. at ¶ 8; Doc. 75: Plaintiff's Decl. at 8; Doc. 68-4: MSJ Ex at 38 (Witness Statement by Mills)]. Within minutes of the Plaintiff's conversation with Sergeant Mills, Officer Burke came into the Plaintiff's housing dorm and gave him a sick call form at Mills' direction. [Doc. 1: Verified Complaint at 3; Doc. 68-4: Burke Decl. at ¶ 6; Doc. 68-5: Mills Decl. at ¶ 8].

A few inmates decided to escort the Plaintiff to an AA class in hopes of obtaining emergency medical treatment for him. [Doc. 1: Verified Complaint at 4]. Sergeant Mills informed Captain Mullis that several inmates were refusing orders to return to their pod and had left the unit without permission. [Doc. 68-6: Mullis Decl. at ¶ 7; Doc. 68-5: Mills Decl. at ¶ 9].

Captain Mullis responded to the main corridor where he saw the Plaintiff being assisted down the corridor by three other inmates, followed by Sergeant Mills. [Doc. 68-6: Mullis Decl. at ¶ 8]. Captain Mullis called for

---

[6] According to the Plaintiff, Nurse Haire "refused" to see him. [Doc. 1: Verified Complaint at 3].

7

Case 3:20-cv-00286-MR Document 78 Filed 06/27/22 Page 7 of 17

additional staff and intercepted the offenders in the corridor. [Id.]. Captain Mullis ordered the offenders to submit to restraints for staff safety and to gain control of them. [Id. at ¶ 9]. The offenders began to argue that there was a medical emergency. [Id.]. Sergeant Mills said that she had already contacted medical staff, who had determined that the situation was not an emergency, and that the Plaintiff had been ordered to submit a sick call. [Id. at ¶ 10].

Captain Mullis determined that a custody and control issue existed when it became apparent that these individuals were acting in a group and that their actions were inciting other offenders to join in. [Id. at ¶ 11]. Because the offenders would not submit to restraints, and to prevent further escalation of the situation which could be an immediate threat to staff safety, Captain Mullis called a Code for an inmate disturbance. [Id.]. The gathering crowd dispersed as additional staff arrived, and the four offenders finally submitted to restraints without any use of force; they were escorted to restrictive housing and charged with disciplinary infractions. [Id. at ¶¶ 12-13; Doc. 1: Complaint at 4]. The Plaintiff was found guilty of participating in a group demonstration and participating in a risk group activity for the incident in the corridor. [Doc. 68-4: Burke Decl. Ex. at 15 (Record of Disciplinary Hearing); Doc. 68-6: Mullis Decl. at ¶ 13].

Nurse Haire came to see the Plaintiff at a holding cage in the solitary confinement unit at 8:38 p.m. (two hours after he first reported), and noted his injury. [Doc. 75: Plaintiff's Decl. at 10; Doc. 76: MSJ Response Ex. at 12 (Clinical Encounter noting a swollen and painful right ankle with no bruising; inability to flex foot, extend ankle, wiggle toes, or bear weight)]. She gave the Plaintiff ibuprofen and an ice pack, scheduled an x-ray, and referred the Plaintiff to a provider. [Doc. 76: MSJ Response Ex at 13-14]. The Plaintiff was in "extreme pain" for the rest of the night. [Doc. 75: Plaintiff's Decl. at 10]. An x-ray the following day showed that his ankle was, indeed, broken. [Id.; Doc. 1: Complaint at 4; Doc. 76: MSJ Response Ex. at 15].

Sergeant Mills, Officer Burke, and Captain Mullis are correctional officers who have never been part of the medical staff. [Doc. 68-5: Mills Decl. at ¶ 2; Doc. 68-4: Burke Decl. at ¶ 2; Doc. 68-6: Mullis Decl. at ¶ 2]. According to Mills, Burke, and Mullis, they were not deliberately indifferent to his serious medical needs, and complied with NCDPS and Lanesboro CI policies and procedures. [Doc. 68-5: Mills Decl. at ¶ 10; Doc. 68-4: Burke Decl. at ¶ 9; Doc. 68-6: Mullis Decl. at ¶ 14]. According to the Plaintiff, Sergeant Mills and Officer Burke could "clearly see" that the Plaintiff was in pain and that his ankle was swollen; Mills "knew that Nurse Haire['s] conduct was not in lockstep with the sick call policy;" Mills refused Plaintiff's request

9

that she send him to medical herself; and Mills and Burke could have directed a referral to health care staff. [Doc. 7: Plaintiff's Decl. at 8-9].

## IV. DISCUSSION

### A. Motion for Summary Judgment

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more,

rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it.").

To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). A prison official, however, is not liable if he knew the underlying facts but believed, even if unsoundly, that the risk to which the facts gave rise was insubstantial or nonexistent. Farmer, 511 U.S. at 837.

The Plaintiff claims that Defendants Burke, Mills, and Mullis were deliberately indifferent to a serious medical need by failing to provide him with immediate medical care for his ankle injury. [Doc. 1: Complaint at 3-4, 6].

The forecast of evidence, when construed in the Plaintiff's favor, shows that Defendant Mills promptly informed medical that the Plaintiff had declared a medical emergency, then followed medical's instructions by having Defendant Burke deliver a sick call form to the Plaintiff a short time later. When the Plaintiff and other inmates decided to leave the unit in search of

further assistance, Defendant Mullis stopped them due to a security risk and sent them to restrictive housing, where the Plaintiff was seen by a nurse.

Under this forecast of evidence, Plaintiff has failed to establish that any of these Defendants had the requisite state of mind to establish deliberate indifference under the law. The Defendants were non-medical correctional staff who promptly reported the Plaintiff's injury to the medical department and followed medical's instruction to provide him with a sick call form. The Plaintiff has failed to forecast any evidence, aside from his own disagreement with medical's determination that the injury was not an emergency, that the Defendants knew or had a reason to believe that he was being mistreated. See generally Miltier, 896 F.2d at 854 (prison wardens were entitled to summary judgment where no record evidence suggested why they should not have been entitled to rely on their health care providers' expertise); Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) ("absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official … will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."). The Plaintiff has forecast evidence that the Defendants were, at most, negligent for failing to independently appreciate the severity of his injury and directly refer him for emergency medical care. See Miltier, 896

F.2d at 852 (mere negligence or malpractice does not violate the Eighth Amendment); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) ("mere 'disagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances."). The Plaintiff has not raised a genuine issue for trial here.

The Defendants are also entitled to qualified immunity. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted). The upshot of Plaintiff's claim is that Mills, Burke and Mullis should have recognized that the medical opinion and remedial action of a health care provider (Haire)

13

were incorrect, and should have overruled such. The Defendants, not being health care workers, however, made the reasonable judgment to follow Haire's directives. That is precisely the sort of reasonable judgment that is protected by qualified immunity.

Because the Plaintiff has not presented a forecast of evidence that the Defendants violated a constitutional right, the Court grants them summary judgment on this ground as well.

**B.     Plaintiff's Pending Motion**

Finally the Plaintiff has filed a "Motion for Rule 56(f) Continuance" [Doc. 73] that is construed as a Motion to Compel. He complains that he submitted requests for production of documents, including reports and video footage, which the Defendants failed to produce. According to the Plaintiff, counsel for the Defendants "withheld" an NCDPS record of hearing report that included the names of officers and inmates "that were there," and from which the Plaintiff could have learned discoverable information to prove his claim.[7] [Id. at 2]. He requests 60 days within which to "conduct interrogatories on

---

[7] The Court notes that the Defendants filed disciplinary investigation and hearing records in support of their Motion for Summary Judgment. [See, e.g., Doc. 68-4: Burke Decl. Ex at 15-17 (Record of Hearing); id. at 18-19 (Offense and Disciplinary Report); id. at 21, 38-41, 43 (Witness Statements)].

the inmates, and officers that were there, and get the defendants to turn over the video footage." [Id.].

The Plaintiff previously moved to compel video footage and documents including investigation reports and incident reports. [Doc. 53 (Motion to Compel); see Doc. 54 (Request for Production of Documents)]. The Court denied the Motion because the Plaintiff failed to certify that he had attempted to resolve the issue with counsel, and because the Defendants had demonstrated that they attempted to comply with the Plaintiff's discovery requests. [Doc. 63 (Order); see Docs. 59, 59-1, 59-2]; see also Fed. R. Civ. P. 37(a)(1) (a motion to compel must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action); LCvR 7.1(b) (a non-dispositive civil motion "must show that counsel have conferred and attempted tin good faith to resolve areas of disagreement or describe the timely attempts of the movant to confer with opposing counsel;" a motion that fails to do so "may be summarily denied."). The instant Motion fails for the same reasons discussed in its prior Order. [Doc. 63].

15
Case 3:20-cv-00286-MR   Document 78   Filed 06/27/22   Page 15 of 17

The instant Motion is also untimely, having been filed more than three months after the discovery window closed,[8] and the Plaintiff has failed to demonstrate good cause to reopen discovery. See generally Fed. R. Civ. P. 16(b)(4) (a scheduling order may be modified "only for good cause and with the judge's consent."); Ardrey v. United Parcel Service, 798 F.2d 679, 682 (4th Cir. 1986) (a court has "wide latitude in controlling discovery and … [t]he latitude given the district courts extends as well to the manner in which it orders the course and scope of discovery."). For that reason, too, the Motion is denied.

## V. CONCLUSION

For the reasons stated herein, the Court grants Defendants Burke, Mills, and Mullis' Motion for Summary Judgment and denies the Plaintiff's Motion to Compel.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Defendant's Motion for Summary Judgment [Doc. 68] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

---

[8] The discovery window closed on January 21, 2022 [Doc. 64] and the Motion to Compel is dated May 9, 2022 [Doc. 73].

2. The Plaintiff's "Motion for Rule 56(f) Continuance" [Doc. 73] is construed as a Motion to Compel and is **DENIED**.

The Clerk is respectfully directed to terminate this action.

**IT IS SO ORDERED.**

Signed: June 27, 2022

Martin Reidinger
Chief United States District Judge